IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOMINION NUTRITION, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04 C 4902 |
| RAYMOND CESCA, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominion Nutrition, Inc. ("DNI") alleges that defendant Raymond Cesca is its former President and Chairman of the Board.[1] Allegedly, after leaving DNI, defendant has attempted to market plaintiff's "Unique Products" to potential customers of DNI. The Unique Products, which are not specifically defined in the Complaint, are indicated to be a processed milk by-product resulting from the production of cream and skim milk.[2] Cesca's initial contact with the Unique Products

---

[1] Defendant admits that he was Chairman of the Board, but denies that he was the President or an employee of DNI.

[2] In a settlement proposal drafted by plaintiff, the Unique Products are defined as "milk-based products having a high concentration of protein, high calcium, non-fat, and low lactose, or any similar variation thereof."

was as a consultant retained by Dominion Processing LLP ("DP"), a limited liability company that was DNI's predecessor. Cesca allegedly had a confidentiality agreement with DP which continued to apply when DP was restructured into DNI. Plaintiff contends defendant's post-DNI attempts to market the Unique Products constitutes the common law violations of (I) breach of fiduciary duty, (III) intentional interference with business expectancy, (IV) seizure of corporate opportunity, and (V) breach of contract.[3] There is complete diversity of citizenship and the amount in controversy is in excess of $75,000.

Pending in Utah District Court is a diversity action that DNI brought against Tom Myers.[4] Under the consulting agreement, Myers allegedly had access to confidential information about the Unique Products. Myers left the consultant to work directly with DP. He allegedly had a tentative agreement to work for DNI, but that arrangement was not consummated. Like Cesca, Myers is alleged to be improperly attempting to market the Unique Products. Allegations regarding Cesca's and Myers's conduct are contained in both the Illinois and Utah actions. The five counts against Myers in the Utah action have identical labels with the

---

[3]The Complaint also included a Count II claim for trade secret misappropriation under 765 ILCS 1065/2, but plaintiff has voluntarily dismissed that count of the Complaint.

[4]This case was originally filed in California, but the parties thereafter agreed to transfer the case to Utah.

five original counts against Cesca in the Illinois action, except that the trade secret misappropriation in the Utah action is based on a California statute, not an Illinois statute. Global Nutrifoods, LLC ("GNF") has intervened in the Utah Action. GNF alleges that consultants retained by DP actually developed and own the rights to the Unique Products and that the consultants have assigned those rights to GNF. GNF alleges that DNI and its principal, Ron Achs, are improperly marketing products for which they do not own the rights.

Cesca contends that the central dispute is between GNF and DNI regarding who owns the rights to the Unique Products. Presently pending is Cesca's motion to stay the Illinois action pending resolution of the allegedly parallel action in Utah. Also pending is DNI's motion to enforce an alleged settlement agreement between DNI and Cesca. One provision of the alleged settlement agreement is that the Illinois action be dismissed. The motion to enforce the alleged settlement agreement will be considered first.

On December 15, 2004, Cesca was being deposed in the Illinois action. It is undisputed that, during the luncheon recess, the parties engaged in settlement negotiations. Upon returning from the break, the following was said on the record

with Cesca present.

       GRAHAM [attorney for DNI]: We have been talking over the break about the possibility of a settlement, and the proposal that we have advanced is one that would include two principal components.

       First, one in which Mr. Cesca would agree to a noncompete, the terms of which we will work out in a formal document in good faith as soon as we can; but, in general terms we would understand that to mean that he will not work with others directly or indirectly to aid or assist in the production, marketing or other assistance to get high-protein, low-fat dairy-based products into the market.

       And secondly, it would have a non-disparagement component which we would understand to mean that he will not say disparaging things about Dominion or its personnel, or take the position publicly or privately that Dominion does not own the unique products or unique processes as we have talked about them.

       He may, of course, respond to subpoenas or other court invitations; and he may, of course, talk to others who invite him to give his honest opinion and he can answer honestly, but he wouldn't volunteer those opinions in any setting other are [sic] than, you know, a court invitation, hopefully.

       Is that consistent with what we had in mind?

       MATHEWSON [attorney for Cesca]: Yes, as a general principle it is consistent with our discussions over the last couple of hours, and we will work in good faith to reach a mutually acceptable agreement in writing on those issues.

       And that we are agreeing to suspend Mr. Cesca's deposition as of now, with the understanding that if we are unable to come to terms in connection with a settlement, we will resume his deposition at a time and place convenient to everyone.

>           GRAHAM: Right. So I guess with that we
>      are adjourned.
>
>           MATHEWSON: I think we are.

Dec. 15, 2004 Tr. at 99-100.

It is undisputed that DNI thereafter drafted a written settlement proposal and submitted it to Cesca. The parties, however, could not agree as to the language of the settlement agreement. Cesca's principal objection was that the definition of Unique Products contained in DNI's draft was too broad and would prevent Cesca from working in the dairy products industry. He also objects to the time limitations contained in the draft. Cesca suggested limiting his prohibited activities under the settlement to being applicable to any unique processes or products that the Utah litigation ultimately determines to be owned by DNI.

In an affidavit provided with plaintiff's reply,[5] Graham states that, in July 2004, he had submitted a written settlement proposal to Cesca. He further states that, during the December 15, 2004 breaktime negotiations, the parties had agreed to modify some of the language contained in the July 2004 draft. Graham states that the December 2004 draft is in conformity with

---

[5] These facts are not supported by the affidavit filed in support of the initial motion. Although not raised until the reply, defendant had an opportunity to respond because he was granted leave to file a surreply.

the agreement reached during the off-the-record negotiations. Mathewson provides an affidavit stating that there was no discussion of revising the July 2004 draft during the December 15, 2004 off-the-record negotiations. In his affidavits, he states that the parties never agreed as to the products and processes in which DNI has a protectible interest and that there was never any agreement as to a settlement. Instead, Mathewson states that the parties agreed to continue to negotiate in good faith to reach a final settlement, including reaching an agreement as to the interests of DNI that would be protected. Also, the December 2004 draft of DNI contains a mutual release which includes "Cesca releas[ing] DNI . . . from any claims or defenses he asserted or could have asserted and that arise out of or are related to the facts alleged in the complaint." Mathewson states that there was never a discussion of including such a mutual release in the settlement.

This court has authority to determine whether the parties have settled the case and dismiss the case if the parties have so agreed. See Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996), cert. denied, 519 U.S. 1117 (1997); Denari v. Genesis Insurance Co., 2004 WL 1375735 *2 (N.D. Ill. June 17, 2004). That would be especially true here since, even if this were purely a state law claim, there is diversity of citizenship and the value of the settlement apparently would satisfy the jurisdictional amount

requirement since the underlying claims satisfy that amount. Presently, the court need only consider whether there is a settlement requiring that the action pending before it be dismissed.[6]

The deposition at which the purported settlement was reached occurred in Illinois. Cesca is an Illinois resident and the litigation that is one of the subjects of the purported settlement is pending in Illinois. Both parties cite Illinois law regarding whether there is an enforceable settlement agreement. Although the December 2004 draft settlement provides that it and any related disputes shall be interpreted, governed, and enforced according to Idaho law, the parties make no argument based on Idaho law. The parties have implicitly agreed either that Illinois law applies to their present dispute or that the pertinent Illinois law is not substantively different from Idaho law. Illinois law will be applied to the dispute regarding whether an enforceable settlement exists. See Massachusetts Bay Insurance Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120

---

[6]In its motion, plaintiff requests that the court order Cesca to execute the December 2004 draft or, alternatively, effectuate the purpose of the settlement. It is noted that the December 2004 draft includes this language: "The parties irrevocably agree that the United States District Court of Idaho, or other [sic] state courts within Idaho, shall have exclusive jurisdiction (i.e., personal and subject matter jurisdiction) over the parties and this matter for the purposes of enforcing any provision of this agreement."

(7th Cir. 1998); Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir. 1991); TBI, Inc. v. Communication Consulting Services, Inc., 2004 WL 2609200 *1 (N.D. Ill. Nov. 15, 2004); Morris Silverman Management Corp. v. Western Union Financial Services, Inc., 284 F. Supp. 2d 964, 968-69 (N.D. Ill. 2003).

An enforceable oral contract to settle a case may be formed before there is a written document memorializing that settlement. Denari, 2004 WL 1375735 at *2; Thermos Co. v. Starbucks Corp., 1998 WL 299469 *4 (N.D. Ill. May 29, 1998).

> In order to establish the existence of an agreement, the parties must demonstrate that there was an offer, acceptance, and a meeting of the minds as to the terms of the agreement. The terms of the agreement must be sufficiently definite for the court to enforce the settlement. Defalco v. Oak Lawn Public Library, 2000 WL 263922, at *3-4 (Mar. 1, 2000) (noting that courts may look to the ordinary linguistic meaning of a term to define the terms of the agreement.) Although an oral settlement must set forth the terms of the agreement with sufficient definiteness, the settlement may be contingent upon a subsequent agreement. "[T]he fact that a settlement agreement calls for the parties to reach another agreement in the future--in other words, an 'agreement to agree'--will not prevent the settlement from being enforced." Thermos Co. v. Starbucks Corp., 1998 WL 299469, at *4 (N.D. Ill. May 29, 1998) (quoting S and T Mfg. Co., Inc. v. County of Hillsborough, 815 F.2d 676, 678-79 (Fed. Cir. 1987)). A party cannot avoid performance under an agreement to agree by withholding its consent, in bad faith, to the unresolved term. See generally, Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443 (7th Cir. 1992).

Denari, 2004 WL 1375735 at *2.

If the only evidence to consider were the attorney statements made at Cesca's deposition, it would not be found that an enforceable settlement existed. Graham initially refers to a "possibility" of a settlement. Mathewson then makes clear that the parties are still attempting to reach a settlement and that Cesca's deposition would be completed at a later date if no accord is reached. There would be no possibility of a continued deposition if an accord had already been reached and all that was left was to memorialize it. Graham then agrees with Mathewson's statement. The on-the-record statements only support that a settlement had not already been reached.

In an affidavit, however, Graham states that the parties had agreed to all the terms of a settlement, that they had specifically agreed to revise the July 2004 settlement proposal. The on-the-record statements at the deposition, of course, are to the contrary. Mathewson's affidavit statements are also to the contrary. On the documents submitted, there is a factual dispute regarding whether this case has been settled. There is no sufficient basis for the court presently finding there is an enforceable settlement requiring dismissal of this case. To the extent DNI desires to further pursue this issue, it should amend its complaint to add a claim that there is an enforceable settlement and the issue will have to be resolved at trial.

The other question to consider is whether the present case should be stayed pending resolution of the Utah action in which DNI, Myers, GNF, and possibly Achs are parties.[7]

> As a general rule, a federal suit may be dismissed "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court." Ridge Gold Standard Liquors v. Joseph E. Seagram, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) (citing Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976); Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co., 600 F.2d 1228, 1233 (7th Cir. 1979)). District courts are accorded "a great deal of latitude and discretion" in determining whether one action is duplicative of another, but generally, a suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." Ridge Gold, 572 F. Supp. at 1213 (citations omitted).

Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993). "[B]efore dismissing a suit as duplicative, 'the district judge should consider any special factors counseling for or against the exercise of jurisdiction in the case before him.'" Id. at 224 (quoting Calvert, 600 F.3d at 1234). To the extent Colorado River provides guidance in the present situation, it is recognized that being parallel actions does not require that the cases have precise symmetry. Cases generally are parallel if there is a substantial likelihood that resolving one case will

---

[7]In the Utah action, Achs's motion to dismiss for lack of personal jurisdiction and improper venue is pending.

dispose of all claims in the other case. See Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004).

The Illinois action and Utah action certainly have much factual overlap. Myers's involvement is alleged in the Complaint before this court and Cesca's involvement is alleged in the complaint before the Utah District Court. Whether DNI has a proprietary interest in the Unique Products and what the Unique Products and Processes actually may be are issues pertinent to the claims in both suits, though a determination that DNI has no proprietary interests probably would not conclusively resolve all claims in both cases. Still, the cases are distinct in that the claims in the present case must be based on any contract and relationship Cesca had with DNI and Cesca's actual attempts to market products to others, while the claims in the Utah case must be based on any contract and relationship Myers had with DNI and Myers's actual attempts to market products to others. It would not be appropriate to simply stay the Illinois action because there is no substantial likelihood that the Utah action will resolve all issues for the Illinois action. Also, Cesca insists that, absent a stay, GNF will be forced to intervene in the Illinois action as well. The Illinois action, however, was filed four months before the Utah action and discovery is about to close. If GNF had any intentions of intervening, it should have so moved months ago.

Certainly, it would have been more efficient to have named Myers and Cesca as defendants in a single case. There may, however, have been personal jurisdiction problems if Cesca had been brought into a case in Utah or California. In his motion, though, Cesca contends that there is a forum where all defendants could have been sued. See Cesca Reply at 9. He does not specifically identify that forum, but perhaps he would not object to the claims against him being brought in Utah instead of Illinois.[8]

Assuming there would be no personal jurisdiction problem, it could have been appropriate to dismiss one of the actions without prejudice so that DNI could amend the Illinois or Utah action to have Myers and Cesca as defendants in a single lawsuit. Or another way to achieve a similar result would be to transfer this action to Utah or transfer the Utah action to the Northern District of Illinois and then assign the two cases to the same judge or actually consolidate the two cases. At this point in time, however, that would not be an appropriate action to take. Cf. N.D. Ill. Loc. R. 40.4(b)(3) (one requirement for reassigning a case as related is that "the earlier case has not progressed to

---

[8] Cesca contends there is no need to bring any claims against him, that he is just a nominal defendant being used to obtain additional discovery. This court has no sufficient basis for assuming that any claims against Cesca are specious.

the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially"). In the Illinois action, discovery is to be completed by May 15, 2005. Plaintiff has already indicated that it is prepared to move for summary judgment. Alternatively, if there is no summary judgment motion, then the parties will be submitting their final pretrial order and the case will soon be on the court's trial calendar. The latest scheduling order in the Utah action, dated April 11, 2005, provides that the discovery cutoff in that case is October 7, 2005, with a final pretrial conference scheduled for March 3, 2006, and a 10-day jury trial scheduled for March 20, 2006. Joining the Illinois action with the Utah action would likely result in a substantial delay of the Illinois action.

Since the Utah action is not likely to resolve all issues in the Illinois action and since joining the two actions at this point would likely substantially delay the Illinois action, the Illinois action will not be stayed nor will the Illinois action be transferred or will DNI be required to file a single consolidated action.

IT IS THEREFORE ORDERED that plaintiff's motion to enforce a settlement agreement [13] is denied without prejudice.

Defendant's motion to stay lawsuit [14] is denied. A status hearing is set for May 25, 2005 at 11:00 a.m.

          ENTER:

          *William T. Hart*
          UNITED STATES DISTRICT JUDGE

DATED: MAY 10, 2005