IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOMINION NUTRITION, INC.,           )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       No. 04 C 4902
                                    )
RAYMOND CESCA,                      )
                                    )
                Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominion Nutrition, Inc. ("DNI") claims that it
has rights to a microfiltration process for producing high-
protein milk derivative products that it calls "Hi-Pro" products.
Ron Achs is an officer of DNI and its principal. Plaintiff
claims that Achs developed the Hi-Pro process. Achs was one of
the members of DNI's predecessor, Dominion Processing LLC ("DP").
DP's interests in Hi-Pro reverted to Achs who assigned that
interest to DNI. Defendant Raymond Cesca was a consultant to DP
and was thereafter the President and Chairman of the Board of
DNI. Plaintiff claims that, with Cesca acting on its behalf, it
was on the verge of entering into an arrangement to supply Hi-Pro
to McDonald's restaurants. Before that arrangement was
consummated, Cesca abruptly resigned from DNI. Plaintiff alleges

that Cesca then worked for and possibly owned another company, Global Nutrifoods LLC ("GNF"),[1] that attempted to sell the same type of products to McDonald's. Plaintiff also alleges that Cesca thereafter falsely disparaged DNI in conversations with McDonald's. Cesca contends that DNI did not actually own the rights to Hi-Pro nor did it have the ability to produce Hi-Pro. Cesca contends that he abruptly resigned when he learned these facts, denies he has an ownership interest in a competitor, and contends that any negative statements he made to McDonald's were truthful.

Plaintiff's complaint included five counts. Plaintiff voluntarily dismissed Count II, which was labeled as trade secret misappropriation in violation of the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065. The parties agree that Illinois law applies to the other common law counts. Count I is a claim for breach of fiduciary duty. Plaintiff claims that Cesca breached the fiduciary duty he owed to DNI as an officer and director when he attempted to dissuade McDonald's from doing business with DNI and instead sought that opportunity for himself or on behalf of an entity other than DNI. Count III is a claim that Cesca's interference constituted intentional interference with business expectancy. Count IV is a also a claim for a type of breach of

---

[1]In the complaint, GNF is referred to as "the Cesca Group."

fiduciary duty. Unlike Count I, Count IV focuses entirely on Cesca's attempt to make a different business arrangement with McDonald's and is labeled as a seizure of corporate opportunity. Count V is a breach of contract claim based on Cesca's alleged violation of agreements in which he promised to retain in confidence confidential or proprietary information of DNI. Plaintiff has moved for summary judgment in its favor on Counts I, III, and IV. Defendant has moved for summary judgment dismissing these same three counts on the ground that ITSA preempts these claims. See 765 ILCS 1065/8. Neither party makes any motion regarding the Count V contract claim.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Eiencorp, Inc. v. Rocky Mountain Radar, Inc., 398 F.3d 962, 965 (7th Cir. 2005); Estate of Moreland v. Dieter, 395 F.3d 747, 758 (7th Cir.), cert. denied, 125 S. Ct. 2915 (2005); Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004); Hudson v. Chicago Transit Authority, 375 F.3d 552, 558 (7th Cir. 2004). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001); Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it would bear the burden of proof at trial. Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986); Binz v. Brandt Construction Co., 301 F.3d 529, 532 (7th Cir. 2002); Traylor v. Brown, 295 F.3d 783, 790 (7th Cir. 2002). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago, 357 F.3d 677, 679 (7th Cir. 2004); NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988); Shyman v. UNUM Life Insurance Co. of America, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do

more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" Logan, 96 F.3d at 978 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Outlaw, 259 F.3d at 837.

Defendant's motion for summary judgment will be considered first. On this motion, all genuine factual disputes must be resolved in plaintiff's favor. Defendant relies on § 8 of ITSA[2] which provides:

(a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and

---

[2]ITSA follows the Uniform Trade Secrets Act ("UTSA"), which has been adopted by Illinois and 44 other states. See 765 ILCS 1065/1 (Supp. 2005) (annotations).

other laws of this State providing civil remedies for misappropriation of a trade secret.

(b) This Act does not affect:

(1) contractual remedies, whether or not based upon misappropriation of a trade secret, provided however, that a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty;

(2) other civil remedies that are not based upon misappropriation of a trade secret;

(3) criminal remedies, whether or not based upon misappropriation of a trade secret; or

(4) the definition of a trade secret contained in any other Act of this State.

765 ILCS 1065/8.

Section 2 of ITSA defines "trade secret,"

"misappropriation," and "improper means."

As used in this Act, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. Reverse engineering or independent development shall not be considered improper means.

(b) "Misappropriation" means:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

* * *

(d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2.

Published opinions of the Illinois state courts have not construed § 8 with any specificity. See Hecny Transportation, Inc. v. Chu, 430 F.3d 402, 404 (7th Cir. 2005). In their briefs, the parties rely on two different constructions of § 8 that have appeared in federal district court cases in Illinois. Defendant relies on cases such as Learning Curve Toys, L.P. v. Playwood Toys, Inc., 1999 WL 529572 *3 (N.D. Ill. July 20, 1999), which concludes: "ITSA does not . . . simply preempt common law claims for which misappropriation of a trade secret is an element. Rather, the provision eliminated common law claims based on conduct which might support an ITSA action. In other words, if the operative facts are arguably cognizable under the ITSA, any common law claim that might have been available on those facts in

- 7 -

the past now no longer exists in Illinois." See also Fox Controls, Inc. v. Honeywell, Inc., 2002 WL 1949723 *3 (N.D. Ill. Aug. 22, 2002); Thomas & Betts Corp. v. Panduit Corp., 108 F. Supp. 2d 968, 972-73 (N.D. Ill. 2000). Plaintiff relies on cases such as Automed Technologies, Inc. v. Eller, 160 F. Supp. 2d 915, 922 (N.D. Ill. 2001), which hold that there is no preemption unless the tort involves "misuse of secret information," that is, misappropriation of an actual trade secret. See also Charles Schwab & Co. v. Carter, 2005 WL 2369815 *4-5 (N.D. Ill. Sept. 27, 2005). Compare also Hauck Manufacturing Co. v. Astec Industries, Inc., 375 F. Supp. 2d 649, 654-58 (E.D. Tenn. 2004) (discussing various constructions of the preemption provision of UTSA and adopting a "'same proof' standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have 'misappropriated' a 'trade secret' as those two terms are defined in the UTSA").

Four days after the parties filed their last brief on this issue, the Seventh Circuit construed ITSA's preemption provision. See Hecny, 430 F.3d at 404-05. Neither party subsequently brought this case to the court's attention. The Seventh Circuit has narrowly construed the preemptive effect of § 8. The Seventh Circuit stated that "[m]issappropriation of a trade secret differs from other kinds of fiduciary defalcations, which the statute therefore does not affect. . . . Illinois courts have had very little to say about the effect of § 8(a),

perhaps because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." The Seventh Circuit also looked to other states' construction of UTSA and the official commentary to UTSA.

> Because the Illinois Trade Secrets Act is based on the Uniform Trade Secrets Act of 1985, we can check our intuition about its preemptive force by asking how other states have understood its scope. The dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets. R.K. Enterprise, L.L.C. v. Pro-Comp Management, Inc., 356 Ark. 565, 158 S.W.3d 685 (2004); Savor, Inc. v. FMR Corp., 812 A.2d 894 (Del. 2002); Weins v. Sporleder, 605 N.W.2d 488 (S.D. 2000). The Uniform Law Commissioners' comment to the model act supports this approach, stating: "The [provision] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." We would be shocked if the Supreme Court of Illinois were to disagree; nothing in its jurisprudence suggests that it would. This is not a close question. An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.

Hecht, 430 F.3d at 404-05.

Under the Seventh Circuit's construction of § 8, which this court is bound to follow absent a subsequent Illinois state court case to the contrary, the Count I and IV breach of fiduciary duty claims cannot possibly be preempted just as any breach of loyalty or stealing of a business opportunity would not be. Similarly, the interference with a business expectancy claim is based on defendant taking away a business opportunity of

plaintiff.  It need not be proven that Cesca relied on any confidential information.  None of the counts will be dismissed based on preemption.  Defendant's motion for summary judgment will be denied.

Plaintiff's motion for summary judgment will now be considered.  Defendant contends that certain of plaintiff's factual assertions in support of its motion are not properly supported and plaintiff raises similar contentions regarding defendant's factual assertions.  While plaintiff incorporated its contentions in its Local Rule 56.1 reply, defendant filed a separate motion to strike.  Defendant contends that certain supporting documents and factual assertions in plaintiff's Local Rule 56.1 statement of facts should be stricken and that the entire motion for summary judgment should also be stricken for lack of sufficient support.  This bench does not favor motions to strike either Rule 56.1 statements or summary judgment motions. See "Motion Practice" section of Judge Hart's Web Page (http://www.ilnd.uscourts.gov/JUDGE/HART/wthpage.htm); Fenje v. Feld, 301 F. Supp. 2d 781, 789 n.3 (N.D. Ill. 2003), aff'd, 398 F.3d 620 (7th Cir. 2005).  Defendant could have responded in his Rule 56.1(b)(3) statement that certain factual assertions of plaintiff were not adequately supported.  The motion to strike will be denied without prejudice.

Although no factual assertions or pleadings will be stricken, as to both parties' submissions, the court will only

consider material factual assertions that are adequately supported.  As general matters, the following is noted.

A letter or oral statement of a third party is not inadmissible hearsay if it is not being used to prove the truth of the matter contained therein.  Such statements may be proper evidence of the speaker's intent or other state of mind; evidence of conduct that was occurring, such as contract negotiations or joint work on a project; or evidence that a person had knowledge of certain information.  <u>See</u> Fed. R. Evid. 801(c); <u>Fenje</u>, 301 F. Supp. 2d at 811; <u>Sills v. Bendix Commercial Vehicle Systems LLC</u>, 2005 WL 2674926 *4 & n.9 (N.D. Ind. Oct. 20, 2005).

Prior statements of a party are admissible nonhearsay as an admission of a party-opponent and may be used as such by the other party.  Fed. R. Evid. 801(d)(2); <u>Fenje</u>, 301 F. Supp. 2d at 811.

As to authentication, documents produced by an opponent may be treated as authentic.  <u>Fenje</u>, 301 F. Supp. 2d at 809; <u>Hood v. Dryvit Systems, Inc.</u>, 2005 WL 3005612 *3 (N.D. Ill. Nov. 8, 2005).  "E-mail communications may be authenticated as being from the purported author based on an affidavit of the recipient; the e-mail address from which it originated; comparison of the content to other evidence; and/or statements or other communications from the purported author acknowledging the e-mail communication that is being authenticated."  <u>Fenje</u>, 301 F. Supp. 2d at 809.

Statements in a deposition, affidavit, or declaration must be based on personal knowledge of the person speaking. Fed. R. Civ. P. 56(e); Fed. R. Evid. 602; Barner v. City of Harvey, 1998 WL 664951 *3 (N.D. Ill. Sept. 18, 1998). An employee of a corporation or limited liability company cannot make factual statements simply based on the collective knowledge of the organization. See Barner, 1998 WL 664951 at *4; Monroe v. United Air Lines, Inc., 1981 WL 268 *6 (N.D. Ill. Sept. 29, 1981); Travelers Casualty & Surety Co. v. Excess Insurance Co., 197 F.R.D. 601, 603 n.2 (S.D. Ohio 2000). Cf. PPM Finance, Inc. v. Norandal USA, Inc., 392 F.3d 889, 994-95 (7th Cir. 2004); Federal Savings & Loan Insurance Corp. v. Griffin, 935 F.2d 691, 702 (5th Cir. 1991), cert. denied, 502 U.S. 1092 (1992).[3] For example, Michael Francis of APV Invesnys[4] cannot speak on personal knowledge regarding conduct of APV that occurred prior to his employment there. Travelers Casualty, 197 F.R.D. at 603 n.2. Similarly, Ron Achs cannot properly testify that "we" (meaning he and other DP or DNI employees) never communicated with Francis at APV. Achs can only testify regarding communications or meetings in which he actually participated.

[3]None of the speakers at issue regarding the pending summary judgment motion was a corporate employee who had been designated to provide deposition testimony in accordance with Fed. R. Civ. P. 30(b)(6). See PPM Finance, 392 F.3d at 994-95. Nor do any of the speakers testify as custodians of documents relying on business records to support their testimony. See Griffin, 935 F.2d at 702.

[4]The various APV entities will hereafter be referred to as "APV."

Plaintiff contends that Achs developed the Hi-Pro process, initially assigned those rights to DP, and subsequently assigned them to DNI. Defendant contends that APV developed a process for separating raw milk into virgin whey and concentrated milk products ("CMP"). Tom Myers was vice president of research and development for Weidner Nutrition Group ("Weidner"). As an employee of Weidner, Myers worked with DP. Subsequently, Myers became an employee of DP. Defendant contends that, while still an employee of Weidner, Myers developed Hi-Pro products that he produced using CMP's from APV's separation process. It is further contended that Myers obtained Weidner's rights to Hi-Pro products and that Myers assigned those rights to GNF. In a federal action now pending in Utah, DNI brought suit against Myers raising claims similar to those it raises regarding Cesca in the case sub judice. GNF has intervened in the Utah action, seeking a declaration as against DNI and Achs that GNF owns the rights to the Hi-Pro products and that they have interfered with those rights. Whether or not plaintiff owns the rights to Hi-Pro products is central to each of plaintiff's claims. Drawing all reasonable inferences in and resolving all factual disputes in defendant's favor, it must be determined whether the evidence only supports that DNI owns the Hi-Pro rights. If not, a genuine factual dispute exists that prevents plaintiff from being entitled to summary judgment. Since plaintiff has the burden of proving its claims, it has the burden of providing competent evidence supporting that it owns the Hi-Pro rights. If plaintiff

has submitted such evidence, a genuine factual dispute exists only if defendant has submitted competent evidence to the contrary.

Defendant provides the declaration of Francis, who states he was an employee of various North American APV entities until March 2004. He is now employed by an Australian APV entity. The facts recited in Francis's declaration, if accepted, are sufficient to support that APV, not Achs, developed the process for separating raw milk into virgin whey and CMP's. However, it is unclear whether Francis's statements are based on personal knowledge. He does expressly state that his declaration is based on personal knowledge. Francis Decl. ¶ 1. However, although Francis states that he worked for the North American APV entities until March 2004, he does not state when he began working there. In his declaration, he states that APV had developed the process at issue as of 1998, implying that Francis was at APV in 1998. When discussing contacts with APV in 2002, though, Francis uses the qualifier "[i]t is my understanding," implying he does not have personal knowledge of those particular facts. See id. ¶ 4. Plaintiff provides an August 30, 2005 declaration of Achs in which he states that Francis cannot have personal knowledge of certain prior facts because Achs and Rick Anderson had never had contact with or heard of Francis until early 2003 and instead dealt with other people at APV. First, Achs cannot testify as to what Anderson knew or with whom Anderson may have had contact outside Achs's presence. Also, just because Achs or others at DP

did not have contact with Francis does not mean that Francis was not already at APV. Since Francis expressly states that his declaration is based on personal knowledge and there is no conclusive evidence to the contrary, his statement that APV had previously developed the separation process must be taken as true for purposes of plaintiff's motion for summary judgment. Moreover, Francis provides a February 9, 2004 e-mail of Achs that was copied to Francis (as well as Cesca). Francis Decl. Exh. D. In that e-mail, Achs admits that the separation process is proprietary technology of APV.[5] That is admissible against plaintiff as an admission of its agent. Fed. R. Evid. 801(d)(2)(D). On plaintiff's motion for summary judgment, it must be taken as true that APV, not DNI, had the ownership rights to the separation process. In January or February 2004, APV terminated its relationship with Achs and DNI, withdrawing any right of DNI to use APV's separation process.

Defendant provides the declaration of Myers, who states he has personal knowledge of the facts set forth therein. Although it is questionable whether Myers has personal knowledge of the facts he states about APV's ownership and development of the separation process,[6] he can testify on personal knowledge as

---

[5]Achs also states in the e-mail that "DNI's contributions are limited to developing the final Hi-Pro Products and in developing the markets for Hi-Pro."

[6]Myers does qualify some of these statements with phrases such as "I understand," "I have learned," "to my knowledge," "my understanding," and "I am not aware." See Myers Decl. ¶¶ 4, 7-8, 10-12.

to his development of Hi-Pro products from CMP's provided to him.
Myers states that he created specifications for Hi-Pro products.
He also states that he acquired the rights to those products from
Weidner, his then-employer, and subsequently assigned those
rights to GNF.

Genuine factual disputes exist. On plaintiff's summary
judgment motion, it must be taken as true that APV owns the
rights to the separation process and that, in turn, Weidner,
Myers, and GNF owned the rights to the Hi-Pro products developed
from the CPM's resulting from APV's separation process.
Accordingly, it must also be taken as true that Achs did not
develop the pertinent processes and therefore did not have any
rights therein to assign to DP or DNI. As of the time Cesca left
DNI, there is no evidence that DNI had the right to use the
processes of APV, Myers, or GNF. Therefore, DNI could not have
sold such products to McDonald's and, thus, could not have lost
any business that it had a reasonable expectancy of obtaining.

Drawing all reasonable inferences and resolving all
genuine factual disputes in defendant's favor, the following
facts must also be assumed to be true for purposes of resolving
plaintiff's motion for summary judgment. Cesca was the President
and Chairman of the Board for DNI. Cesca acted on DNI's behalf
in attempting to provide Hi-Pro products to McDonald's. By
December 2003, McDonald's was willing to explore the potential of
using Hi-Pro products. It had not actually agreed to purchase
any such products, only to explore the possibility of developing

- 16 -

products that it might eventually use. To formalize the
exploration process, McDonald's sent DNI a "Business
Relationship/Confidentiality Agreement," which sets forth the
parameters of the exploration relationship and the subsequent
supplier relationship that may occur. No one ever signed that
agreement on DNI's behalf.

In early 2004, Cesca learned information from which he
conclude that Achs and DNI did not own the rights to Hi-Pro
products. APV withdrew permission for Achs and DNI to use its
separation processes. Cesca thereafter ceased trying to develop
a relationship between McDonald's and DNI. On March 2, 2004,
Cesca submitted his written resignation from DNI. The next day,
Cesca sent an e-mail to Myers and Francis with an apparent
discussion agenda regarding providing dairy products to
McDonald's and a major food distributor. In March 2004, Cesca
arranged meetings with McDonald's involving APV and GNF. These
meetings involved discussions about supplying McDonald's with Hi-
Pro products. Because contacts occurred so soon after Cesca's
resignation, plaintiff contends Cesca must have begun discussions
before he actually resigned from DNI. The March 3, 2004 e-mail,
however, is cryptic so little can be inferred from it. It could
be the first attempt at arranging a meeting with the two
recipients. Cesca testified that no actual meeting resulted from
this particular e-mail. It is not a necessary inference that
discussions about a new group began before Cesca resigned. Since
there is no conclusive evidence of meetings or discussions of a

new group occurring before March 2, 2004, on plaintiff's summary judgment motion, it must be assumed that Cesca did not begin attempting to form a new group until after he resigned from DNI.[7]

Plaintiff also contends that it is undisputed that Cesca used some of his prior DNI work on behalf of the new group. Plaintiff's primary support for this is a March 23, 2004 e-mail from Cesca to Myers. That e-mail refers to things that need to be organized in the event there was a meeting with McDonald's the next week. One thing listed is: "5. May have to change the titles on the NDA [non-disclosure agreement] from Dominion to Global Nutra Foods, LLC." There is, however, no evidence that this subsequently occurred. There is no conclusive evidence that Cesca used any DNI assets for the new group.

In March 2004, Cesca told McDonald's that DNI did not have rights to the Hi-Pro products. McDonald's broke off discussions with DNI and there is presently no interest on McDonald's part in purchasing Hi-Pro products from DNI.

A necessary element of the intentional interference with business expectancy claim is that plaintiff had a reasonable expectancy of entering into a valid business relationship. Associated Underwriters of America Agency, Inc. v. McCarthy,

---

[7]Cesca insists he was just a facilitator of meetings between McDonald's and the others. For present purposes, Cesca's precise role with the new group need not be defined. There is evidence that he expected compensation and a possible share of the resulting relationship if the group were to be successful in establishing a relationship with McDonald's or some other company.

356 Ill. App. 3d 1010, 826 N.E.2d 1160, 1169 (1st Dist. 2005);
Awalt v. Allied Security, Remedial Const. Services, L.P., 2006
WL 181681 *7 (S.D. Ill. Jan. 17, 2006). With no valid interest
in either the separation process or Hi-Pro products, plaintiff
cannot show that it had a reasonable expectancy of entering into
a valid business relationship with McDonald's.

As to the Count IV seizing a business opportunity claim,
an element of that claim is that there existed a business
opportunity belonging to the corporation. Goldberg v. Michael,
328 Ill. App. 3d 593, 766 N.E.2d 246, 251 (2d Dist. 2002);
Graham v. Mimms, 111 Ill. App. 3d 751, 444 N.E.2d 549, 556 (1st
Dist. 1982); In re McCook Metals, L.L.C., 319 B.R. 570, 596
(Bankr. N.D. Ill. 2005). Whether it was feasible for the
corporation to take advantage of the potential business
opportunity is a relevant consideration. Graham, 444 N.E.2d at
557; Anest v. Audino, 332 Ill. App. 3d 468, 773 N.E.2d 202, 211
(2d Dist.), appeal denied, 202 Ill. 2d 598, 787 N.E.2d 154
(2002); In re H. King & Associates, 295 B.R. 246, 269 (Bankr.
N.D. Ill. 2003). But even if the corporation was not in a
position to take advantage of the business opportunity, a
fiduciary is estopped from denying that the opportunity he or she
developed belongs to the corporation if the fiduciary failed to
first offer the opportunity to the corporation and used corporate
assets to develop the opportunity. Graham, 444 N.E.2d at 557;
Anest, 773 N.E.2d at 211; McCook, 319 B.R. at 596; King, 295 B.R.
at 269. Since the uncontested facts do not support either that

DNI could take advantage of the opportunity (because it did not have rights to the Hi-Pro products) or that Cesca used any corporate assets in aiding the other group in pursuing the opportunity, plaintiff is not entitled to summary judgment on this count.

As to Count I, there is no dispute that Cesca was a fiduciary of DNI. Plaintiff contends that Cesca's duty of loyalty precludes him from pursuing business that he was previously actively involved in pursuing on behalf of DNI. There is, however, no conclusive evidence that Cesca violated the duty of loyalty while still an officer of DNI. There is no conclusive evidence that Cesca attempted to undermine DNI's relationship with McDonald's prior to March 2, 2004. A fiduciary generally is not prohibited from competing with his or her former principal. Exhibit Works, Inc. v. Inspired Exhibits, Inc., 2005 WL 3527254 *3 (N.D. Ill. Dec. 21, 2005).

> "Corporate officers, however, . . . owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." Veco Corp. v. Babcock, 243 Ill. App. 3d 153, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993) (citing Smith-Shrader Co. v. Smith, 136 Ill. App. 3d 571, 483 N.E.2d 283 (Ill. App. Ct. 1985); Graham v. Mimms, 111 Ill. App. 3d 751, 444 N.E.2d 549 (Ill .App. Ct. 1982)). "The resignation of an officer will not sever liability for transactions completed after termination of the officer's association with the corporation for transactions which (1) began during the existence of the relationship or (2) were founded on information acquired during the relationship." Dowell v. Bitner, 273 Ill.

App. 3d 681, 652 N.E.2d 1372, 1380 (Ill. App. Ct. 1995).

Exhibit Works, 2005 WL 3527254 at *3.

As previously discussed, the evidence does not support that Cesca engaged in impermissible competition prior to his departure. Still to be addressed is whether evidence shows that Cesca improperly relied on information acquired during his relationship with DNI. The information relied upon need not rise to the level of a trade secret. Comedy Cottage, Inc. v. Berk, 145 Ill. App. 3d 355, 495 N.E.2d 1006, 1011-12 (1st Dist. 1986); Superior Environmental Corp. v. Mangan, 247 F. Supp. 2d 1001, 1003 (N.D. Ill. 2003); Regal-Beloit Corp. v. Drecoll, 955 F. Supp. 849, 865 (N.D. Ill. 1996). The information relied upon, however, must have some level of confidentiality. Classic Amenities, Inc. v. Verbeke, 2003 WL 21801021 *2 (N.D. Ill. Aug. 1, 2003); Mangan, 247 F. Supp. 2d at 1003; Regal-Beloit, 955 F. Supp. at 865. It is not a fiduciary violation to rely upon general knowledge acquired during the relationship. Dangeles v. Muhlenfeld, 191 Ill. App. 3d 791, 548 N.E.2d 45, 49 (2d Dist. 1989); Mangan, 247 F. Supp. 2d at 1003.

But even if the evidence conclusively supports that Cesca relied on confidential information acquired as an officer of DNI, plaintiff would not be entitled to summary judgment. The duty of loyalty obliges a fiduciary to refrain from seeking a business opportunity where the fiduciary's private interest conflicts with that of the principal. Stathis v. Geldermann, Inc.,

258 Ill. App. 3d 690, 630 N.E.2d 926, 933 (1st Dist. 1994);
Comedy Cottage, 495 N.E.2d at 1011. There can be no such
conflict if the principal is no longer in the position to take
advantage of the business opportunity. See Comedy Cottage, 495
N.E.2d at 1012; Northwestern Terra Cotta Corp. v. Wilson, 74 Ill.
App. 2d 38, 219 N.E.2d 860, 864-65 (1st Dist. 1966); McCabe
Packing Co. v. United States, 809 F. Supp. 614, 617 (C.D. Ill.
1992). The principal must have the capacity to take advantage of
the opportunity. Stathis, 630 N.E.2d at 933. On summary
judgment, it must be assumed that, as of March 2004, DNI did not
have the ability to supply McDonald's with Hi-Pro products.
Therefore, Cesca's pursuit of such business would not have been
in conflict with plaintiff and could not have breached his duty
of loyalty. Plaintiff is not entitled to summary judgment on
Count I.

IT IS THEREFORE ORDERED that defendant's motion to strike
[63] is denied without prejudice. Plaintiff's [47] and
defendant's [90] motions for summary judgment are denied. In
open court on April 19, 2006 at 11:00 a.m., the parties shall
submit an original and one copy of a final pretrial order in full
compliance with Local Rule 16.1 and Local Rule Form 16.1.1.

ENTER:

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED:  MARCH  2 , 2006